UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROCHELLE NEWSOM,

Plaintiff,

v.

DETROIT AREA AGENCY ON AGING

Defendant.
_____/

Case No. 17-cv-12991

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
R. STEVEN WHALEN

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [11]

### I. Introduction

Plaintiff Rochelle Newsom initiated this litigation on September 12, 2017. Dkt. No. 1. Here, she alleges that the Defendant, the Detroit Area Agency on Aging, did not compensate her for overtime work and in that way violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201. *See id.*

The Defendant moved for summary judgment on June 4, 2018. Dkt. No. 11. Newsom responded to the motion on June 25, 2018. Dkt. No. 13. The Defendant replied on July 8, 2018. Dkt. No. 14.

Presently before the Court is the Defendant's Motion for Summary Judgment [11]. The motion is fully briefed, and the Court held a hearing on the motion on Monday, August 20, 2018 at 11:00 a.m. While on the record, and for the reasons

detailed herein, the Court DENIED the Defendant's Motion for Summary Judgment [11].

## II. Background

The Defendant is a non-profit entity which aims to provide healthier lives for senior citizens and adults with disabilities. Dkt. No. 11, p. 10 (Pg. ID 45). It employed Newsom from September 2014 until June 2017, when it terminated her employment. Dkt. No. 13, p. 5 (Pg. ID 302). While working for the Defendant, Newsom was a social worker support coordinator. Dkt. No. 1, p. 2 (Pg. ID 2). In that role, she visited clients in their homes and coordinated with service providers to manage her clients' care. *Id.* These responsibilities necessitated that Newsom spend many of her working hours away from the office. *See* Dkt. No. 14, p. 5 (Pg. ID 364).

### A. Newsom's Working Hours

Newsom was a non-exempt employee, and the Defendant's non-exempt employees had a regular work week of no more than forty hours and 7.5 hours per day, Monday through Friday. *Id.* at p. 6 (Pg. ID 365); Dkt. No. 11, p. 11 (Pg. ID 46). These 7.5 hours were generally supposed to be from 8:30 a.m. to 5:00 p.m. Dkt. No. 11-3, p. 20 (Pg. ID 126). Yet as Newsom was frequently away from the office, e.g. visiting clients, both parties understood that her work would not necessarily be completed within that time frame. *Id.*; *see also* Dkt. No. 14, p. 5 (Pg. ID 364).

Newsom alleges that she always worked more than forty hours per week and has not been paid for any of that overtime. Dkt. No. 1, p. 3 (Pg. ID 3). She maintains that, from September 2016 until her June 2017 departure, she worked at least four hours of overtime per weekday and ordinarily fifty-six to sixty hours per week. Dkt. No. 11-2, pp. 8, 20–21 (Pg. ID 76, 88–89).

Nara Lee and Sylvia Brown both directly supervised Newsom at various times during Newsom's employment with the Defendant. *Id.* at pp. 7, 14 (Pg. ID 75, 82). And Newsom makes numerous claims in an effort to demonstrate that both of her supervisors knew she was working overtime. *Id.* at p. 21 (Pg. ID 89). First, Newsom asserts that she directly informed her supervisors that she was working overtime. *Id.*

Second, Newsom claims that she performed this extra work at her supervisors' direction. For example, in an email cited by Newsom, Lee requests that Newsom work over the weekend. Dkt. No. 13-3, p. 2 (Pg. ID 341). Likewise, in an email sent at 3:43 p.m. on a Wednesday, Lee instructs Newsom to "COMPLETE 10 more transfer forms by tonight[.]" *Id.* at p. 3 (Pg. ID 342). No evidence in the record indicates how long it would take Newsom to complete those forms, but Newsom argues that her work on the forms extended past 5:00 p.m. Third, as part of a corrective action plan stemming from performance concerns, Newsom had to complete daily logs chronicling her work on a given day. *See, e.g.*, Dkt. No. 13-4. According to Newsom, her corrective action plan logs reflected that she was working

3

more than 7.5 hours per day. *See id.* at pp. 3–4 (Pg. ID 344–45); Dkt. No. 13, pp. 16–17 (Pg. ID 313–14). She further alleges that Lee scrutinized these logs. *See, e.g.*, Dkt. No. 13-4, pp. 3–4 (Pg. ID 344–45); Dkt. No. 13, pp. 16–17 (Pg. ID 313–14).

Finally, Newsom maintains that she completed much of this overtime work on a computer system which the Defendant managed. Dkt. No. 1, p. 3 (Pg. ID 3).

In her deposition, Brown did not contradict Newsom's claim that she had worked overtime hours. Dkt. No. 11-3, pp. 18–20 (Pg. ID 124–26). Brown testified that Newsom likely worked after hours and possibly on the weekend, but Brown complained that Newsom should not have needed to work these hours. *Id.* Newsom was a "social butterfly" and "distracted" at work, Brown said. *Id.* at pp. 19–20 (Pg. ID 125–26). And, according to Brown, those facts led to Newsom's inability to complete her assignments during normal work hours, not any problems with being inundated with work.

The Defendant's employees completed daily time reports intended to reflect their working hours. Newsom never indicated on these time reports that she had worked more than 7.5 hours in a day, however. *See* Dkt. No. 11-2, pp. 14–61 (Pg. ID 173–220). Yet Brown testified that employees never adjusted their time on these reports to reflect the time of the day when they had actually worked. Dkt. No. 11–3, p. 20 (Pg. ID 126). Brown explained that if employees had actually worked from

4

8:30 a.m. to 5:30 p.m., for instance, they would still write in their time report that they had worked from 8:30 a.m. to 5:00 p.m. *See id.*

B. The Defendant's Overtime Procedures

Newsom concedes that she never followed the Defendant's overtime procedures. Dkt. No. 11-2, p. 19 (Pg. ID 87). The Defendant's employee handbook provides that "[e]mployees who anticipate the need for overtime to complete the week's work must notify the supervisor in advance and obtain approval before working hours that extend beyond their normal schedule." Dkt. No. 11-3, p. 5 (Pg. ID 111). Employees also shouldered responsibility for "submit[ing] their time record weekly as directed by their manager," and "maintain[ing] an accurate daily record of his or her hours worked." *Id.* at p. 4 (Pg. ID 110). Separate overtime guidance reiterated that "[e]mployees are not permitted to work overtime without the prior approval/direction from their supervisor or department head." *Id.* at p. 7 (Pg. ID 113). That guidance also established that "[n]o overtime shall be worked unless specifically requested by management." *Id.* at p. 8 (Pg. ID 114).[1]

Newsom admitted that she never requested permission to work overtime. Dkt. No. 11-2, p. 19 (Pg. ID 87). But she testified that prior to February 2017 she had never seen any of the Defendant's overtime policies. *Id.* at p. 9 (Pg. ID 77).

---

[1] Under this policy, the Defendant was to pay employees time and one-half for all hours worked exceeding forty hours in one week. Dkt. No. 11-3, p. 8 (Pg. ID 114). The policy also outlined higher pay rates for weekend and holiday work. *Id.*

Newsom also claims that, starting in August 2016, the Defendant informed employees that it was not going to compensate them for overtime work. *Id.* at p. 21 (Pg. ID 89). According to Newsom, the Defendant expressed this position because of a separate litigation regarding overtime pay. *Id.* at p. 11–12 (Pg. ID 79–80). To effectuate this ban on overtime work, the Defendant prohibited its employees from staying in the office past 5:00 p.m., Newsom said. *Id.* She also claims that, as assignments were typically due by midnight, she left the office at 5:00 p.m. and simply continued working from home. *Id.* at p. 12 (Pg. ID 80).

### III. Legal Standard

Federal Rule of Civil Procedure 56(c) empowers a court to grant summary judgment if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1968). There is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Mere allegations or denials in the non-movant's pleadings will not suffice, nor will a mere scintilla of evidence supporting the non-moving party. *Id.*

6

at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *Id.* at 252.

## IV. Discussion

The Defendant argues that it is entitled to summary judgment on Newsom's FLSA claim. Newsom opposes the Defendant's motion, arguing that this case should proceed to trial. As noted during oral argument on the motion, the Court agrees with Newsom. Accordingly, the Court will deny the Defendant's summary judgment motion.

### A. FLSA Claim (Count I)

The parties vigorously dispute whether a reasonable juror could conclude (1) that Newsom worked overtime hours; and (2) that the Defendant knew or reasonably should have known that Newsom worked those hours. Because the Court concludes that a reasonable juror could make those findings, the Defendant will not prevail on its summary judgment motion.

The FLSA provides, in relevant part, that:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). Employ, as used here, "includes to suffer or permit to work." *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 388 (2016) (internal quotation marks omitted) (quoting 29 U.S.C. § 203(g)). "Thus, if an 'employer knows or has reason to believe' that an employee 'is continuing to work' in excess of forty hours a week, 'the time is working time' and must be compensated at time-and-a-half[.]" *Id.* This is true, the Sixth Circuit has noted, "even if the extra work performed was 'not requested' or even officially prohibited." *Id.* (quoting 29 C.F.R. § 785.11) (citing *Reich v. Stewart*, 121 F.3d 400, 407 (8th Cir. 1997)).

"[A] 'reason to believe,' or constructive knowledge of something, exists when the employer 'should have discovered it through the exercise of reasonable diligence.'" *Id.* (quoting *Carlisle Equip. Co. v. U.S. Sec'y. of Labor & Occupational Safety*, 24 F.3d 790, 793 (6th Cir. 1994)). Yet "where an employer has no knowledge that an employee is engaging in overtime work and the employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work," the Sixth Circuit has said that "'the employer's failure to pay for the overtime hours is not a violation of' the statute." *Id.* at 389 (some internal quotation marks omitted) (quoting *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 872 (6th Cir. 2012)).

The general rule here is that "[u]nder the FLSA, *if* an employer establishes a reasonable process for an employee to report uncompensated work time, the

8

employer is not liable for non-payment if the employee fails to follow the established process." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *White*, 699 F.3d at 876). There are two exceptions to this general rule, however. *Id.* Employers must still pay overtime compensation if they "prevent[ ] the employees from reporting overtime or [are] otherwise notified of the employees' unreported work[.]" *Id.* (alterations in original) (internal quotation marks omitted) (quoting *White*, 699 F.3d at 876).

The Defendant argues that it is entitled to summary judgment, based on *White* and its progeny. The Court disagrees. In *White*, the defendant compensated its employees for overtime work, but only if that work was recorded in an "exception log." 699 F.3d at 876–77. The plaintiff received compensation for all overtime hours which she recorded in the log and thus knew of the defendant's overtime log policy. *See id.* Yet the plaintiff had not recorded the relevant overtime hours in the log, and there was no evidence that the defendant had prevented the plaintiff from logging overtime hours or otherwise knew that the plaintiff had been working overtime hours. *Id.* at 877. Those three facts doomed plaintiff's FLSA claim. *Id.*

More recently, in *Craig*, the Sixth Circuit again applied the principles stated in *White*. There, the court determined that there was a genuine issue of material fact about "whether [the plaintiff] . . . knew the procedure in place to properly submit overtime (if such a procedure existed at all)[.]" 823 F.3d at 390 (internal quotation

9

marks omitted). The court reached this conclusion because the plaintiff was unaware of her eligibility for overtime wages until she was nearly done working for the defendant. *Id.* Evidence indicating the plaintiff's lack of knowledge included her beliefs that the company could not afford to pay her overtime wages and that the defendant's responsibility to pay overtime wages stemmed from obligations to a union (as opposed to statutory duties). *Id.* Also, the plaintiff's boss directed her to pay certain employees for overtime work, but she of course was not one of these employees. *Id.* This further impacted the plaintiff's alleged misunderstanding regarding overtime pay. *Id.*

The *Craig* court also held that reasonable people could disagree about whether the defendant knew of the plaintiff's overtime work. *Id.* at 390–91. The plaintiff completed detailed time sheets reflecting that she was working more than forty hours per week. *See id.* at 386, 390–91. The plaintiff's boss claimed that he had never reviewed her time sheets. *Id.* at 390–91.

But two facts created a genuine dispute regarding the defendant's knowledge of her working hours. First, the plaintiff's boss requested that the plaintiff detail her assignments to help him understand what she was doing day-to-day, so that "he could keep track of her time." *Id.* at 391 (internal quotation marks and citations omitted). Second, the plaintiff's boss received an email from another employee

noting that the plaintiff had been working on weekends. *Id.* The court, therefore, determined that a jury had to decide plaintiff's FLSA claim.

        1.    Reasonableness of the Defendant's Overtime Policy and Plaintiff's Knowledge of the Policy

A jury must also decide Newsom's FLSA claim. To start, there is a genuine dispute regarding whether the Defendant had a reasonable overtime policy and whether Newsom knew of that policy. The Defendant's overtime policy purportedly required employees to "maintain an accurate daily record of his or her hours worked[,]" and all reasonable jurors would not agree that the Defendant had implemented this policy. Dkt. No. 11-3, p. 4 (Pg. ID 110). Brown testified that employees typically represented on their daily time reports that they had worked from 8:30 a.m. to 5:00 p.m., regardless of whether they had actually worked those hours. *Id.* at p. 20 (Pg. ID 126). The only departures from that time span reflected vacation time or similar absences, Brown testified. *Id.* This suggests that the daily time reports were not a method through which employees reported overtime work. Therefore, the Defendant will not prevail on its summary judgment motion simply because Newsom did not note overtime work on her daily time reports.

There is also an unresolved issue of material fact about whether Newsom was aware of the Defendant's overtime policies. In contrast to *White*, there is no evidence that Newsom, or anyone else, received overtime wages by following the Defendant's overtime policies. Indeed, Newsom testified that she had not even seen

an overtime policy until February 2017, which was several years after she had begun working for the Defendant. Dkt. No. 11-2, p. 9 (Pg. ID 77). Newsom's lack of knowledge about the Defendant's overtime policy is thus similar to that of the plaintiff in *Craig*.

        2.      The Defendant's Knowledge of Plaintiff's Overtime Work and the Defendant's Alleged Prevention of Overtime Reporting

Even if the Defendant's overtime policy was reasonable as a matter of law, a reasonable juror could find that both exceptions to the general rule in *White* apply here. Specifically, a juror could conclude that the Defendant knew of Newsom's overtime work and that the Defendant prevented Newsom from reporting overtime work.

The evidence suggesting that the Defendant knew of Newsom's overtime work mirrors that presented in *Craig*. For instance, because of performance concerns, Newsom's supervisors forced her to detail her work during a given day in a log. *See, e.g.*, Dkt. No. 13-4, pp. 3–5 (Pg. ID 345–47). These daily logs included the time of day when she worked on a given task and how much time she spent on that particular task. *See id.* And these logs show her working more than 7.5 hours per day. *See id.* The logs were not only created at the Defendant's direction, but were also significant in the Defendant's determination of whether Newsom would retain her employment with the Defendant. A reasonable person could thus conclude

that Newsom's supervisors carefully examined these logs; and therefore, knew that Newsom was working overtime.[2]

The record contains even more evidence indicating that Newsom's supervisors were aware that she was working overtime. Lee wrote to Newsom, "[t]his weekend . . . I want you to go through all of your [participant's] progress notes and make sure that they don't have blanks or [']****['] in them and you complete them." Dkt. No. 13-3, p. 2 (Pg. ID 341). Lee also instructed Newsom, at 3:43 p.m. on a Wednesday, to finish ten transfer forms "by tonight." *Id.* at p. 3 (Pg. ID 342). The record does not offer insight into how long this assignment would have taken Newsom to complete. But, viewing the evidence in the light most favorable to Newsom, this demand suggests that Lee knew Newsom was working overtime.

What is more, Brown also indicated that she knew Newsom was working overtime. In a deposition, Brown described Newsom as a "social butterfly" and a "distracted" worker during normal hours. Dkt. No. 11-3, p. 18 (Pg. ID 124). Brown

---

[2] In arguing that it lacked knowledge of Newsom's overtime work as a matter of law, the Defendant cites to *Hertz v. Woodbury Cty.*, 566 F.3d 775, 781–82 (8th Cir. 2009). In that case, the court concluded that "[i]t would not be reasonable to require that the County weed through non-payroll [computer aided dispatch] records to determine whether or not its employees were working beyond their scheduled hours." *Id.* at 782. But here, Newsom has not solely provided evidence that the Defendant had access to voluminous and pedestrian documents which suggest that she was working overtime. Instead, the daily logs' connection to a corrective action plan measures that Newsom's supervisors had reason to closely inspect the logs: why put Newsom on a corrective action plan and then not assess the documents intended to show whether her performance was improving?

13

accordingly doubted that Newsom was able to complete all her work during normal hours. *Id.* at pp. 18–20 (Pg. ID 124–26). Based on the above evidence, a reasonable juror could find that the Defendant knew that Newsom had been working overtime.

This case must proceed to trial on yet another issue: whether the Defendant prevented Newsom from requesting overtime. Starting in August 2016, according to Newsom, the Defendant represented that it was not going to pay employees for overtime. Dkt. No. 11-2, p. 21 (Pg. ID 89). Newsom continues that the Defendant attempted to prevent employees from working overtime by closing its office at 5:00 p.m. each work day. *Id.* at p. 11–12 (Pg. ID 79–80). Yet assignments were due at midnight, purportedly forcing Newsom to leave the office and work from elsewhere. *Id.* at p. 12 (Pg. ID 80). This evidence, if true, indicates that the Defendant stopped its employees from requesting overtime. In light of the foregoing, the Court will conclude that there are genuine issues of material fact on Newsom's FLSA claim.

## V. Conclusion

The Defendant moved for summary judgment on Newsom's FLSA claim, arguing both that Newsom did not work overtime hours and that, if she did, the Defendant lacked knowledge of such hours. Dkt. No. 11. As explained herein, the Court finds that the Defendant has not made those two showings as a matter of law. Accordingly, the Court ruled on this motion from the bench and DENIED the Defendant's Motion for Summary Judgment [11].

IT IS SO ORDERED.

Dated: August 24, 2018                                /s/Gershwin A. Drain
                                                     GERSHWIN A. DRAIN
                                                     United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 24, 2018, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Deputy Clerk